UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BASHAN BRADY,

    Petitioner,

v.

JULIE WOLCOTT, Superintendent of
Orleans Correctional Facility,
ANTHONY ANNUCI, Acting
Commissioner of Department of
Corrections and Community
Supervision,

    Respondents.

20-CV-580 (JLS)

---

BASHAN BRADY,

    Petitioner,

v.

TIMOTHY MCCARTHY,

    Respondent.

19-CV-1280 (JLS) (LGF)

---

## DECISION AND ORDER

*Pro se* petitioner Bashan Brady, an inmate at Orleans Correctional Facility ("Orleans"), petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release based on the conditions of his confinement during the COVID-19 pandemic. Dkt. 1. He also moved for a temporary restraining order that seeks the same relief. Dkt. 3. Respondents Julie Wolcott and Anthony Annucci moved to convert the petition to one under 28 U.S.C. § 2254, to consolidate this case

with Brady's pending 28 U.S.C. § 2254 case, to construe this petition as a motion to amend his earlier habeas petition, and to deny leave to amend as futile. *See* Dkt. 6. For the following reasons, the Court grants Respondents' motion.

## BACKGROUND

### A.   Facts.

Brady currently is in custody at Orleans, a New York State Department of Corrections and Community Supervision ("DOCCS") facility, serving nine years on a 2016 conviction via jury verdict in Monroe County. *See* Dkt. 1, at 1 ¶ 1, 2 ¶¶ 4, 5; *see also* Dkt. 6-1, at 1 ¶ 2. He alleges that he is "37 months away from release." Dkt. 1, at 2 ¶ 8.

Brady claims that his "current prison conditions are unconstitut[io]nal" and violate state and national proclamations and executive orders. *See* Dkt. 1, at 2 ¶ 3, 4 ¶ 14. He alleges that "the staff are not equipped to respond" if an outbreak occurred at Orleans, and that his "current prison conditions do not allow for social distancing." Dkt. 1, at 4 ¶ 13. He raises Fifth and Eighth Amendment claims for a "due process violation for unconstitutional conditions of confinement" and "deliberate[] indifferen[ce] to [his] current high risk medical condition." *See* Dkt. 1, at 16, 21; Dkt. 3, at 8. Brady's asthma and "pre-existing respi[ra]tory issues" exacerbate these conditions of confinement during the COVID-19 pandemic. *See* Dkt. 1, at 2 ¶ 8, 3, ¶ 10. As a result, Brady asks the Court to "direct [his] release with Court specifications within 72 hours." *See* Dkt. 1, at 4 ¶ 2.

Specifically, Brady alleges that his setting is "dorm[i]tory-style with over 50 inmates in an enclosed area without proper ventilation." *See* Dkt. 1, at 3 ¶ 9. His living space is "communal," and he "sleep[s] in a room that is approximately 110 ft. by 60 ft. with approximately 50 other inmates at any given time," placing each inmate "within a 5 ft. proximity of each other at all times." *See* Dkt. 1, at 18-19. Inmates sleep in "double bunk style bedding." *Id.* at 19. Brady alleges that he cannot social distance when using the recreation space, taking meals in the dining area, using the communal shower or bathroom, purchasing food from the commissary, or picking up medication. *See* Dkt. 1, at 19.

Brady cites "prevent[at]ive measures" that DOCCS has taken "to ensure the safety of all inmates," but claims that those steps "are not deemed adequate enough to ensure sa[f]ety by specifications set by the CDC." *See* Dkt. 1, at 17. For example, he alleges that "employees have . . . been mandated to wear masks for their entire shift" but "are not taking these practices seriously" and commonly wear masks and practice social distancing only when their superiors are around. *See id.* at 18; *see also* Dkt. 3, at 4 ¶ 6. He alleges that "several employees who have been within the facility . . . were diagnosed with COVID-19 and/or [were] displaying COVID-19 symptoms." *See* Dkt. 1, at 3 ¶ 11.

Brady does not allege that he presented his claims to a state court. Instead, he states that he has "no immediate remedy under DOCCS Directive 4040." *See* Dkt. 3, at 4 ¶ 9. He also alleges that "State Courts have, effective March 17, 2020, closed [their] doors," so he has "no other form of recourse." *See* Dkt. 1, at 3 ¶ 12.

3

## B.  Procedural History.

On May 7, 2020, Brady submitted a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody based on the conditions of his confinement at Orleans during the COVID-19 pandemic (the "COVID petition"). Dkt. 1. The same day, he moved for a temporary restraining order, which seeks the same relief. Dkt. 3. He also requested to proceed *in forma pauperis*. Dkt. 2. The Court granted Brady's *in forma pauperis* application on May 18, 2020, and ordered Respondents to file and serve an answer or a motion to dismiss the petition within five days. Dkt. 4.

On May 26, 2020, Respondents moved for miscellaneous relief that would effectively dismiss Brady's COVID petition. Dkt. 6. In particular, Respondents asked the Court to: (1) convert Brady's COVID petition to one brought under 28 U.S.C. § 2254; (2) consolidate the COVID petition with Brady's Section 2254 petition already pending before the Court at case number 19-cv-1280 (the "2019 petition"); (3) construe Brady's COVID petition as a motion to amend the 2019 petition; and (4) deny the motion to amend as futile. *See id.* Brady submitted a response on June 4, 2020, and opposed Respondents' motion in all respects. Dkt. 7.

## DISCUSSION

Because Brady is a *pro se* petitioner, the Court will "construe [his] pleadings liberally and interpret them 'to raise the strongest arguments they suggest.'" *See Wells v. Annucci*, No. 19-cv-3841, 2019 WL 2209226, at *1 (S.D.N.Y. May 21, 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Brady is entitled to liberal construction of his submissions, but his *pro se* status

4

"does not exempt [him] from compliance with the relevant rules of procedural and substantive law." *See Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 238 (S.D.N.Y. 2008) (internal quotations and citations omitted).

### I. Respondents' Motion for Miscellaneous Relief.

#### A. Timeliness of Respondents' Motion.

Brady argues that the Court should deny Respondents' motion in its entirety because the motion was untimely. *See* Dkt. 7, at 3-4. He cites this Court's May 18, 2020 order that Respondents respond to or move to dismiss the petition within five days of receiving the order. *See id.*; *see also* Dkt. 4, at 1-2. Respondents filed their motion on May 26, 2020. *See* Dkt 6. Their motion was timely under the briefing schedule in Dkt. 4. *See* Fed. R. Civ. P. 6(a)(1)(C) ("When the period is stated in days . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). The Court therefore proceeds to the merits of Respondents' motion.

#### B. Motion to Convert the COVID Petition from a Section 2241 Petition to a Section 2254 Petition.

Respondents moved to convert the COVID petition, filed under Section 2241, to a Section 2254 petition because relief under Section 2241 is not available to Brady, who is in custody under a state-court judgment of conviction. *See* Dkt. 6;

Dkt. 6-2, at 4-5.[1] Brady opposes Respondents' request, arguing that Section 2241 is available to prisoners who challenge the post-conviction execution of their sentences, as he does. *See* Dkt. 7, at 5.

There are three statutes under which an individual in custody may seek a writ of habeas corpus, two of which are relevant here. Section 2254 applies to "a person in custody pursuant to the judgment of a State court . . . on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Section 2241 is worded more broadly and extends to a prisoner who, among other things, is "in custody under . . . the authority of the United States" or is "in custody in violation of the Constitution or laws . . . of the United States." *See* 28 U.S.C. §§ 2241(c)(1), (3). And Section 2255, which does not apply here, allows a "prisoner in custody under sentence of a court established by Act of Congress"—*i.e.*, a federal prisoner—to attack his sentence. *See* 28 U.S.C. § 2255(a).

The Second Circuit has addressed the difference among these provisions. A person in federal custody may petition for a writ of habeas corpus under Section 2255 or Section 2241, depending on the nature of the challenge: "a federal prisoner's challenge to the execution of a sentence is properly filed pursuant to [Section] 2241, rather than Section 2255, because Section 2255 allows a federal prisoner to challenge only the legality of the original imposition of a sentence." *See James v. Walsh*, 308 F.3d 162, 166 (2d Cir. 2002) (citing *Chambers v. United States*,

---

[1] Page references to Dkt. 6-2 are to the numbering generated by CM/ECF, which appears in the header of each page.

106 F.3d 472, 474 (2d Cir. 1997)). By contrast, Section 2254 "permits a state prisoner to file a habeas petition 'on the ground that he is in custody in violation of the Constitution or laws . . . of the United States.'" *Id.* at 166-67 (quoting 28 U.S.C. § 2254(a)). In other words, a "claim that one is 'in custody' in violation of federal laws [under Section 2254] is broader than a claim that the imposition of one's sentence is illegal." *Id.* at 167.

The "plain language of the pertinent statutes indicates . . . that a federal prisoner may challenge the imposition, but not the execution, of a sentence under Section 2255, while a state prisoner may challenge either the imposition or the execution of a sentence under Section 2254." *James*, 308 F.3d at 167. As a result, a state prisoner's "petition claiming improper execution of his sentence [is] properly brought under Section 2254." *Id.*

The Second Circuit later expanded on this analysis when it considered a parole revocation challenge, concluding that "a state prisoner challenging his or her parole revocation must file under section 2254." *See Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 275 (2d Cir. 2003). Comparing a person in custody on a state judgment to one in custody on a federal judgment, the court explained that a state prisoner "not only may, but according to the terms of section 2254 must, bring a challenge to the execution of his or her sentence . . . under section 2254." *See id.* at 278. Section 2241 is "unavailable" to such a petitioner. *See id.* Stated otherwise, "Section 2241 is not an independent and separate avenue of relief but is to be read in conjunction with the requirements of [Section] 2254, which are 'a limitation on

the general grant of jurisdiction conferred in section 2241 that applies to cases involving prisoners subject to state court judgments.'" *Torres v. Cronin*, No. 19-cv-6462, 2019 WL 6001000, at *1 (W.D.N.Y. Nov. 14, 2019) (quoting *Rittenberry v. Morgan*, 468 F.3d 331, 337 (6th Cir. 2006)).

Brady is in state custody based on a state conviction and judgment. *See* Dkt. 1, at 1 ¶¶ 1-2, 2 ¶ 4; Dkt. 6-1, at 1 ¶ 2. He alleges that his confinement at Orleans during the COVID-19 pandemic violates his rights under the Fifth and Eighth Amendments to the United States Constitution. *See* Dkt. 1, at 16, 21; Dkt. 3, at 8. In other words—and as he acknowledges—Brady claims that his custody in execution of his sentence violates his constitutional rights. *See* Dkt. 7, at 5. As such, his petition falls within the purview of Section 2254.[2]

The Court is not bound by Brady's choice to frame his petition under Section 2241 and, after considering the substance of his allegations, must convert the petition to one filed pursuant to Section 2254.[3] *See Cook*, 321 F.3d at 277 ("[I]f an

---

[2] The Second Circuit has interpreted prison condition claims as comprising challenges to execution of a sentence in the context of federal prisoners. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("This court has long interpreted § 2241 as applying to challenges to the execution of a federal sentence, 'including such matters as the administration of parole, . . . prison disciplinary actions, prison transfers, type of detention and prison conditions.'" (citation omitted)). There is no reason to conclude differently in the context of a state prisoner's prison conditions-based claim under Section 2254.

[3] Brady cites *McPherson v. Lamont*, No. 3:20-cv-534 (JBA), 2020 WL 2198279 (D. Conn. May 6, 2020), to argue that Section 2241 is available to a state prisoner challenging the execution of his sentence. *See* Dkt. 7, at 5. Because *McPherson* involved a mixed group of sentenced and pre-trial prisoners in state custody and relied on Second Circuit cases, *Roccisano v. Menifee*, 293 F.3d 51 (2d Cir. 2002), and *Adams v. United States*, 372 F.3d 132 (2d Cir. 2004), that addressed *federal*

8

application that should be brought under 28 U.S.C. § 2254 is mislabeled as a petition under section 2241, the district court must treat it as a section 2254 application instead."); *Torres*, 2019 WL 6001000, at *2 (concluding that petitioner was limited to relief under Section 2254, noting that petitioner's framing under Section 2241 was not dispositive, and converting to a Section 2254 petition).

For these reasons, the Court grants Respondents' motion to convert Brady's petition to one raised under 28 U.S.C. § 2254.[4]

### C.     Motion to Consolidate 20-cv-580 with 19-cv-1280.

Respondents move to consolidate 20-cv-580, Brady's COVID petition case, with 19-cv-1280, Brady's 2019 petition case, because the petitions arise from common facts and seek the same relief from the same defendant. *See* Dkt. 6-2, at 5-6. Brady opposes this request, arguing that the purposes of the petitions are different, and that the petitions seek different relief. *See* Dkt. 7, at 6.

Courts may consolidate actions that "involve a common question of law or fact." *See* Fed. R. Civ. P. 42(a)(2). Consolidation "is appropriate . . . to serve the interests of judicial economy," and "consolidation of cases with common questions of law or fact is favored 'to avoid unnecessary costs or delay.'" *Safran v. Sheriff of*

---

prisoners' habeas claims, the Court declines to follow its conclusion. *See McPherson*, 2020 WL 2198279, at *5 & n.3.

[4] For the reasons discussed in *Llewellyn v. Wolcott*, No. 20-cv-498, 2020 WL 2525770, at *4 (W.D.N.Y. May 18, 2020), 42 U.S.C. § 1983 is not the proper procedural mechanism for Brady to seek release from Orleans based on the conditions of his confinement.

9

*Nassau Cty.*, Nos. 12-cv-599, 12-cv-3296, 2012 WL 3027924, at *1 (E.D.N.Y. July 20, 2012) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)). District courts have "'broad discretion to determine whether consolidation is appropriate.'" *See id.* (quoting *Johnson*, 899 F.2d at 1284); *see also Kwasny v. Stewart*, No. 2:15-cv-13475, 2017 WL 1279230, at *4 (E.D. Mich. Apr. 6, 2017) ("A federal district court has the discretion to consolidate different state convictions into a single habeas petition."). But the "paramount concern . . . is whether savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Safran*, 2012 WL 3027924, at *1.

Brady's 2019 Section 2254 petition challenges two state convictions. *See* Dkt. 1 (19-cv-1280).[5] There, Brady alleges that certain errors—ineffective assistance of counsel and denial of a fundamentally fair trial—rendered his convictions unconstitutional. *See id.* at 5, 7. He asks the Court to "vacate and reverse [his] conviction" and to either order a new trial or dismiss the indictment. *See id.* at 15. In other words, the 2019 petition seeks relief from unconstitutional confinement in state custody because the conviction for which Brady is confined resulted from a constitutionally deficient trial.

As described above, in the COVID petition, Brady seeks release from confinement at Orleans because the conditions during COVID-19 render his confinement unconstitutional. That the confinement underlying the COVID

---

[5] Page references to Dkt. 1 in 19-cv-1280 are to the numbering generated by CM/ECF, which appears in the header of each page.

10

petition resulted from a conviction raised in the 2019 petition supports consolidation. *See Safran*, 2012 WL 3027924, at *2 (consolidating separate habeas petitions, and noting that "petitioner appear[ed] to challenge the same convictions," so the petitions "involve[d] common questions of law and fact"). In addition, Respondents seek to consolidate two Section 2254 habeas petitions, which are analyzed under the same framework. *Cf. Mills v. Lempke*, No. 11-cv-440, 2012 WL 1574749, at *5 (W.D.N.Y. May 3, 2012) (declining to consolidate actions challenging the same conviction based on a lack of common issues—"[i]n particular, the law applicable to adjudicating habeas corpus petitions and § 1983 actions is distinctly different"); *Ferguson v. Fed. Bureau of Investigation*, No. 89-cv-5071, 1992 WL 249958, at *2 (S.D.N.Y. Sept. 22, 1992) (consolidation was disfavored because cases—a FOIA claim involving FOIA disclosure requirements and a habeas petition against state officials raising constitutional issues—posed different legal issues).

Significantly, consolidation of the 2019 and COVID petition cases does not prejudice Brady. Whether this case is consolidated with the 2019 petition case or considered separately, Respondents' motion regarding the COVID petition hinges on exhaustion of state remedies. In fact, consolidation benefits Brady because it avoids the risk that the COVID petition could be construed as a second and

successive Section 2254 petition[6] and, therefore, be barred. *See* 28 U.S.C. § 2244(b). The Court exercises its discretion to consolidate 20-cv-580 with 19-cv-1280.[7]

### D. Amendment of the 2019 Petition to Include the Claims in the COVID Petition.

Brady's 2019 petition remains pending, so the Court may—and does—construe his COVID petition as a motion to amend his 2019 petition. *See Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002) (examining *Littlejohn v. Artuz*, 271 F.3d 360, 362 (2d Cir. 2001), and explaining that "a motion to amend a § 2254 petition while an initial § 2254 petition [is] still pending before the district court" was governed by Federal Rule of Civil Procedure 15).

Absent consent by the opposing party, a party wishing to amend his pleading after a responsive pleading is filed must obtain leave of court. *See* Fed. R. Civ. P. 15(a). Courts should grant leave to amend "'freely . . . when justice so requires'" but "'may properly deny leave when amendment would be futile.'" *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)). A proposed amendment is futile if the proffered claims are unexhausted

---

[6] Because the issue is not before it, the Court does not consider whether Brady's COVID petition is a second and successive petition under 28 U.S.C. § 2244(b).

[7] This proceeding, 20-cv-580, shall be consolidated with 19-cv-1280, which was filed first. *See Razzoli v. Exec. Office U.S. Marshals*, Nos. 10-cv-4802, 10-cv-4902, 2011 WL 2610385, at *3 n.2 (E.D.N.Y. June 30, 2011) ("The Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss where there are competing litigations. Where there are several competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.").

and the "proposed amended [pleading] would be subject to immediate dismissal." *See id.* at 54-55. Because Brady must present the claims in his COVID petition to a state court before presenting them to this Court, amendment of Brady's 2019 habeas petition to include the claims in his COVID petition is futile.

In particular, a sentenced state prisoner who, like Brady, claims he is in state custody in violation of federal law may seek relief from a federal court by petitioning for a writ of habeas corpus under 28 U.S.C. § 2254(a). Section 2254 requires a petitioner to show that he "exhausted the remedies available in the courts of the State" before a federal court will consider his request for relief. *See* 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."). To exhaust state remedies, a petitioner must "fairly present federal claims to the state courts . . . to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *McCray v. New York*, 573 F. App'x 22, 23 (2d Cir. 2014) (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). A petitioner exhausts if he "presented [his] constitutional claim to the highest state court from which a decision can be obtained." *Lewis v. Bennett*, 328 F. Supp. 2d 396, 403 (W.D.N.Y. 2004) (citing *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)).

There are several ways a petitioner may exhaust his claims. As relevant to the claims in Brady's COVID petition, where the claim for relief is not based on the trial court record, a petitioner may exhaust the claim by raising it to the state trial

court in a collateral post-conviction motion, such as a motion under New York Criminal Procedure Law § 440. *See Elleby v. Smith*, No. 20-cv-2935, 2020 WL 2611921, at *3 (S.D.N.Y. May 22, 2020). Or a petitioner may petition the trial court or appropriate Appellate Division for a writ of habeas corpus and seek review of any decision denying the petition. *Id.*[8] Even when a petitioner challenges the execution, rather than validity, of his sentence under Section 2254, he "is still required to exhaust all of his state court remedies before filing a habeas petition in [federal] court, and . . . bears the burden of establishing that [he] has met this requirement." *Rapeika v. Administrator of Northern State Prison*, No. 20-cv-5358, 2020 WL 2092790, at *1 (D.N.J. May 1, 2020).

Respondents searched for, but did not locate, filings or evidence that Brady sought relief for the claims in his COVID petition in a state court. *See* Dkt. 6-2, at 11. And Brady did not provide any evidence that he exhausted his claims in state court. *See generally* Dkts. 1, 3, 7. In fact, he states that state courts were closed effective March 17, 2020, so he could not pursue his claims there. *See* Dkt. 1, at 3 ¶ 12. Brady did not establish that he exhausted his claims, so the Court next considers whether he may be excused from exhausting.

Section 2254 provides two narrow exceptions to its exhaustion requirement. A federal court may grant a petitioner's unexhausted petition for habeas relief if:

---

[8] Where a petitioner's claim is based on the trial court record—which is not the case for Brady's COVID petition—a petitioner may exhaust by filing a direct appeal to the relevant Appellate Division and, if relief is denied, seeking leave to appeal to the New York Court of Appeals. *See Elleby*, 2020 WL 2611921, at *3.

(1) "there is an absence of State corrective process"; or (2) "circumstances exist that render [the State corrective process] ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). In other words, a petitioner need not exhaust his claims when "there is no further state proceeding for petitioner to pursue" or where such pursuit "would be futile." *See Elleby*, 2020 WL 2611921, at *4 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)).

Neither exception applies here. State court proceedings were available to Brady when he submitted his petition on May 7, 2020, and they remain available now. *See Elleby*, 2020 WL 2611921, at *4; Dkt. 1, at 12. Even on March 22, 2020, New York state courts' limitations on filings did not apply to "emergency applications related to the coronavirus." *See* Dkt. 6-1, at 7 (Ex. 1). Indeed, New York state courts have received, and resolved, claims and petitions seeking release from state custody in connection with the COVID-19 pandemic. *See, e.g., People ex rel. Squirrell v. Langley*, No. 500451/2020, 2020 WL 2736623 (Sup. Ct. Putnam Cty. May 25, 2020) (dismissing habeas corpus petitions by inmates seeking release during the COVID-19 pandemic where the court, after thoroughly examining the measures taken by the sheriff and other officials, concluded there was no violation of petitioners' due process or Eighth Amendment rights); *People ex rel. Stoughton v. Brann*, No. 451078/2020, 2020 WL 1679209 (Sup. Ct. N.Y. Cty. Apr. 6, 2020) (ordering release of 18 "at-risk" prisoners in a due process challenge by 32 petitioners detained at Rikers Island); *People ex rel. Gregor v. Reynolds*, No. CV20-150, 2020 WL 1910116 (Sup. Ct. Essex Cty. Apr. 17, 2020) (concluding, where

several inmates detained pending parole violation proceedings filed Article 70 petitions for release, that sheriff's failure to take adequate protective measures violated the due process rights of an inmate who was vulnerable to COVID-19).

Brady's claim that state courts are unavailable to him, "without any further factual or legal allegations to support his claim, is inadequate to show that there [was or] is no available process in the state courts." *See Rapeika*, 2020 WL 2092790, at *2. Courts may excuse petitioners from exhausting their claims when "relief is truly unavailable," but excusing exhaustion here, where state courts are available, "would turn the habeas system upside down." *See Money v. Pritzker*, No. 20-cv-2093, 2020 WL 1820660, at *22 (N.D. Ill. Apr. 10, 2020). For the same reasons, Brady did not demonstrate that pursuing his request for release in state court is or would have been futile. *See Elleby*, 2020 WL 2611921, at *4.

Other courts have reached similar conclusions when faced with habeas petitions seeking release from state custody based on the COVID-19 pandemic. *See Griffin v. Cook*, No. 3:20-cv-589 (JAM), 2020 WL 2735886, at *5 (D. Conn. May 26, 2020) (collecting cases); *Elleby*, 2020 WL 2611921, at *5.

Requiring exhaustion of Brady's claims in state court affords "the state court[] . . . the first opportunity to review [his] claim[s] and provide any necessary relief." *See O'Sullivan*, 526 U.S. at 844; *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982) ("[A]s a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act."). Exhaustion also ensures that, if the claims in Brady's COVID petition end up back

in federal court, they will "be accompanied by a complete factual record to aid [the Court] in [its] review." *See Rose*, 455 U.S. at 519. A full factual record is particularly important here, in light of the "rapidly changing conditions in prison and the evolving steps that prisons are taking to meet the unprecedented challenges presented by the pandemic." *See Elleby*, 2020 WL 2611921, at *5.

Because the claims in Brady's COVID petition would be subject to immediate dismissal for failure to exhaust,[9] the Court denies Brady leave to amend his 2019 petition to include those claims, without prejudice.[10] Brady may present his request to a state court.

## II. **Brady's Motion for a Temporary Restraining Order.**

Along with his COVID habeas petition, Brady moved for a temporary restraining order "releasing the Petitioner from [his] unconstitutional condition of imprisonment." Dkt. 3, at 1. Because the temporary restraining order seeks the

---

[9] Alternatively, Respondents argue that amendment would be futile because Brady may not assert a conditions of confinement claim in a Section 2254 petition. *See* Dkt. 6-2, at 8-10. Because the Court denies leave to amend based on failure to exhaust, it need not reach this alternative argument.

[10] The Court notes that Brady would have been required to exhaust his claims in state court if the Court had denied Respondents' motion to convert the petition and had analyzed Brady's claims under 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632-35 (2d Cir. 2001) (citing the "requirement of administrative exhaustion as spelled out in . . . decisional law" that applies to Section 2241 petitions and declining to excuse petitioner's failure to exhaust); *Razzoli v. Strada*, No. 10-cv-4802, 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) (explaining that "[b]efore seeking habeas relief under § 2241, . . . prisoners must exhaust any available administrative remedies, or else justify the failure to exhaust these remedies," and holding that petitioner was "not excused from his duty to exhaust administrative remedies").

17

same relief—release from Orleans—as the COVID petition, the Court denies Brady's motion for the reasons discussed above in Section I.D. *See Holloway v. Wolcott*, No. 20-cv-6329, 2020 WL 3172772, at *3 (W.D.N.Y. June 15, 2020) (denying motion for temporary restraining order and preliminary injunction where it "appear[ed] Petitioner's claims, construed under Section 2254, [were] unexhausted"); *see also WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996) ("The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief [he] seeks.").

## CONCLUSION

For the reasons stated above, the Court:

GRANTS Respondents' motion (Dkt. 6) to: (1) convert Brady's COVID petition, filed under 28 U.S.C. § 2241, to one filed under 28 U.S.C. § 2254; (2) consolidate this case with 19-cv-1280; (3) construe the COVID petition as a motion to amend Brady's 2019 petition; and (4) deny leave to amend the 2019 petition to include the claims in the COVID petition; and

DENIES Brady's motion for a temporary restraining order (Dkt. 3).

The Clerk of Court shall update the docket in this case to reflect that Brady's petition (Dkt. 1) was filed pursuant to 28 U.S.C. § 2254, shall consolidate this case

with 19-cv-1280, and shall close this case. The Clerk of Court also shall mail Brady a copy of this decision and order.

SO ORDERED.

Dated:   June 17, 2020
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE